And Mr. Lambert, whenever you're ready. Thank you, your honor, and may it please the court. In 2016, OSHA published an interim final rule that required state plans to increase their civil penalties to match federal ones for the state plans to maintain their at least as effective as status under federal law. That mandate is incompatible with the text of the OSHA Act, but OSHA went years without enforcing the mandate. When it finally threatened to do so in 2022, South Carolina sued to challenge it. The district court dismissed the case, however, under an either or theory. Just a minute. You said in 2022. I thought they always had a clause in there that directed you to bring your rules in compliance with the federal OSHA. Judge Niemeyer, I think this is where the timeline of exactly what OSHA did is critical because what OSHA did in those fame reports changed. Well, they changed, but it didn't mean that there was a lack of interest in enforcing. It seems to me they just chose not to at that point, but what did they say in the report in say 2016? The rule came out in July 2016. It was first noticed in the 2017 fame report, and it just noted that South Carolina had not completed the legislative process. The critical thing came ... And they included that same notation all the way up to 2022, right? Not exactly, Judge Niemeyer, and this is where the facts get really important. In the 2018 fame report, OSHA said, when it came to the civil penalties, this may be a finding the next year if South Carolina did not take significant steps to increase the  Fast forward a year when the 2019 fame report comes out, South Carolina had taken no steps. OSHA did not make it a finding, and OSHA did not even repeat the threat to make it a finding. What did they say? OSHA left it simply as a new issue and noted that the state had not completed the legislative changes. That was it. The threat was gone, and that's significant because OSHA's own manual ... The question is, what do you have to say? The opposition of that, the opposing position would be there was some abandonment or dissipation, as you argue, but it looks like there never was that. It looks like they're always asserting that their level of interest changed from time to time. They say, we mean it, we mean it, but they never abandoned the position that South Carolina had to come into compliance, right? Two thoughts in response to that, Judge Niemeyer. The first is that the threat has to be credible for there to be an Article III injury. The threat became uncredible after OSHA threatened to make it a finding and then walked away from that in 2019 and continued to stay away from it in the 2020 fame report. My second thought is to look around the country at other state plans. South Carolina was not unique in its position to wanting not to increase its civil penalties and not doing so in this time. During these years from 2016 to 2021, you've got Indiana, Kentucky, Maryland, Michigan, Minnesota, North Carolina, Tennessee, and Utah all in the same position as South Carolina. None of them were taking OSHA's threats, if we can call them threats at this point, seriously enough to think that OSHA actually meant business as to enforcing its findings. What does that mean? What does that mean? That's like telling a trooper that I wasn't the only person speeding. You still get a ticket if you're speeding. But if OSHA ... In other words, you're taking the risk that eventually it may just go away. They were consistent. You're not in compliance in 2016, they told you that, and you're saying, I get the benefit of taking the gamble. They say, maybe they forgot about it. Maybe they forgot about it. Oh, man, it's credible as far as I'm concerned. You don't get to decide when it's credible. It's credible when the United States government and their agencies tell you you're not in compliance. That is the credibility. Two thoughts, Judge Gregory. The first one is to the trooper example. This wasn't as if the trooper was pulling some people but not others. The trooper was pulling no one here. The speed limit simply wasn't being enforced because OSHA wasn't moving against any of the state plans. You just named about six, but you've got 50 in the United States. Your Honor, when it comes to state plans under OSHA, about half the states have a state plan. Half the states are governed ... Why wouldn't this be like the trooper pulling them over and giving them a warning? Your Honor, the warnings eventually began to mean nothing. I think I would point to our brief with the library patron example, where you're told time and again if you return the books late, you'll receive a fine, but no one's ever ... That doesn't mean we're abandoning our position of enforcement or that we will not enforce what it basically says we have not decided to enforce, but they never dissipated the notion of advising you every single year that you were not in compliance. When they finally tried to ... They hyped it a couple of times. I said, we'll take the next step and make a finding, and then they backed off that, but they still advised you that you're violating. In other words, you're still getting warnings. Judge Niemeyer, I think we need to go back to the fundamental question of what is a credible threat injury that gives you standing under Article III, and you have to have something that's not a speculative threat of enforcement, but it has to be imminent and credible. OSHA's credibility of the threat went away after OSHA threatened to make it a finding in the 2018 fame report, and then failed to do so the next year, and failed to do so the next year. When things changed, when the threat ... Whatever threat came with the rules publication 2016 went away after OSHA did not enforce it after that 2018 high water mark. It changed. Let me ask you to clarify here. As I understand your argument on appeal, you say there were two injuries, one in 2016, but that dissipated over time, and then another one in 2022. There's no argument that there was equitable tolling or something like that. It just went away. But in the district court, you said, or somebody, whoever's representing the state said, there was no injury in 2016. If there was, we ought to apply equitable tolling. I don't see where this dissipation argument was ever made below. Your Honor, I want to be very specific as to the argument below and the context in which it was raised. The government's argument in the motion to dismiss, and this is around page 50, 55 of the joint appendix, was that the injury began in 2016 and the clock had run. Then the government raised, and it has not been told by the first lawsuit that was filed. The argument we raised in response was the injury that gives rise to this case occurred in 2022, and that OSHA's non-enforcement in the years before that meant the state had no injury. The tolling argument that was made below was in response to what the government made. We have not pushed the tolling argument on appeal. How about page 64 of the joint appendix? Yes, sir. You say that could not point to an Article III injury. In the years before, in fairness, Judge Agee, that briefing probably could have been clearer, but we're also arguing in the span of a page there what we're getting to argue in the span of the better part of 10 pages on appeal to tease out the dissipation. The core question, as this court said in Boyd, variations on an argument made below. The core question to me seems to be whether or not there was a waiver here, because the argument that you're making now on dissipation, if it was made below, if you could point it out, that would be wonderful. I'm simply not seeing it. Your Honor, I don't think we used the word dissipation below, so let me own that, but let me try and show you that we did make the same fundamental argument below that we're making now. The argument we're pushing now is that the injury that gives rise to this case occurred in 2022, that it is a distinct credible threat injury than the one that arose in 2016 from the rules publication. The threat that arose in 2022 came from two things OSHA did, and it's confirmed by a third thing. The first thing ... You say on appeal, yeah, there was an injury in 2016. What I'm looking for is where do you say in the district court, yeah, there was an injury in 2016, but it went away over time, as opposed to we should stop the clock because there's equitable total. Your Honor, we did not say that explicitly below, but I want to make sure I make ... Why do you get to say it now? Because what we're arguing about now is what we argued about below, and that's that 2022 is the time when the injury that gave rise to this case happened. Certainly the final agency action in both instances is the rules publication in 2016, but you can have the same agency action and have separate injuries arise from them, just like you could have the same tax law, pay the tax twice, and be injured on two separate occasions. The first credible threat that arose was from the rules publication. That was a distinct injury from the enforcement that came later, and our fundamental argument below was we have a 2022 injury that gives rise to this claim, and we even said there at page 64 there was non-enforcement in the years before. Whether there was an injury in 2016 at all is ultimately irrelevant to whether we have a distinct new injury in 2022, and that's what I believe we do have from these two things OSHA did. The first was its notice of the revocation of Arizona's state plan, based in part on the fact that Arizona had failed to increase its civil penalties. That was significant because as far as we can find, it is the first time OSHA has ever threatened to revoke a state plan's final approval. The second thing is what OSHA did to South Carolina as well as other states, which was include a finding in the fame report published that summer, that was the 2021 fame report, there was about a six-month lag time, where it made the civil penalties a finding for the very first time. And if you look around the country, it wasn't just South Carolina who noticed a change in OSHA's enforcement posture, other states did too. As we point out in our blue brief, both North Carolina and Minnesota moved very quickly to increase their civil penalties after those two actions from OSHA. I think other states did the same if you were to survey the country, I think Maryland and Utah, for example, increased their penalties in that same little window as well. So what you have is not just South Carolina noticing something has changed with OSHA in 2022, but you have the rest of the state plans across the country as well. Judge Gregory, you had mentioned something earlier about counting states, I think I got pulled away, but I want to make sure I'm clear on something. Half the states have a state plan, half the states are governed by federal guidelines. Some states willingly and quickly increased their civil penalties when OSHA first said so back, you know, the better part of a decade ago, but there were more than a handful of states that resisted the idea that they should be required to do so. And the states that continued to resist that all noticed this change in 2022. That's the credible threat injury that arises here. Let me ask you about 2016, when they told you you had to be in compliance. Could you have brought a lawsuit then to challenge that? Your Honor, I think we could have brought it in 2016. I'll go as far as to say that I think we could have brought it because of a credible threat injury after publication of the 2018. I'm just reading Corner Post, thinking of Corner Post. And Corner Post keeps focusing on when you could have brought a claim. And they raise it in many different ways. And threat of injury is of course one, but being aggrieved is another. When you could have brought a lawsuit is the one that's emphasized most. And if you could have brought it, then it seems to me the cause of action accrued on 2016. And if I could add to that, it still looks like to me on page 64 that below the states that we could not bring a claim in 2016. So, I want to try and take these together, but also keep them distinct. Why don't you take Judge Agee's first? Because you just told me that you could have sued in 2016. Your Honor, I think the argument at page 64 is focused on pressing to the district court the injury we have here arises from an injury, a credible threat that arose in 2022. That looking back at what happened in 2016 was ultimately irrelevant because at least for some period of time, the threat was not there. Whether we talk about a dissipation... I don't understand that. All right, so Judge Niemeyer, I think this gets back to your question. In other words, you were told you were out of compliance. And if you disagreed with that, you could have sued. You agreed with that now. 2016, you could have sued. Now, the question is why, if you could have sued then, it seems to me the statute of limitations begins on a corner post right there. Judge Niemeyer, a statute... The question is why does it toll thereafter? What is your argument why that period is not the controlling period? Your Honor, I don't think it's a question of the statute of limitations and tolling. I think it's a question of injury in fact. If the credible... No, that's when you could have first brought suit. Injury is one way of saying it. Being aggrieved is another way of saying it. In other words, you were told something you disagree with. And you could have sued to correct that. You just agreed with that. You could have sued in 2016. What... Why did... And if you could have sued then, the statute of limitations begins. Now, the question is what stopped it? What stopped it was when the Article III injury went away. Tell me when it went away. My frontline position is it went away when the 2019 Fame Report was published and OSHA failed to follow... What did it say in 2019? The 2019 Fame Report failed to include the... No, what did it include? It included simply that the state had not completed the legislative change. And that's exactly what it said in 2016, right? In 2017, yes, Your Honor. Right. That was the first year it came in a Fame Report. Okay, so there's no difference from 17 to 19 or whenever it was. There is a big difference, Judge Niemeyer, and it's the 2018 Fame Report. OSHA threatened to make it a finding if you didn't take significant steps. No steps were taken and no finding was made. The threat began to... They just heightened the pressure. And then they just... But it didn't dissipate the fact that you could have sued... You could have sued in 16. You could have sued in 19. You could have sued in 22. You could have sued any one of those times because the state disagreed. The state disagreed, but the state doesn't have an Article III injury if there's not a credible threat that OSHA is going to enforce the penalty. It does. That's my whole point. If you read Corner Post, it's much broader than your notion that there has to be a threat forward. Well, Your Honor... What you have to have is you have to be aggrieved by the action. You have to be able to file a lawsuit. Unless Congress has told us otherwise in the legislation in addition, a cause of action does not become complete and present for limitation purpose until the plaintiff can file suit and obtain relief. And could you have filed suit and obtained relief in 16? In 16, yes, Your Honor, while there was a credible threat. The relief we would have been seeking was... Why is it a credible threat? They didn't threaten you with anything. Well, generally, and this Court has said consistently, that a rules publication carries with it a credible threat. After all, why else would the government be publishing the rule? But if the government... Well, not to belabor this, but you, the state, said at page 64, without defendants taking what is typically the first step in revoking the state plans, plaintiffs could not point to an Article III injury to the state plan to invoke this Court's jurisdiction. Yes, Judge Agee. That seems directly contrary to what you're arguing on appeal. I don't think so, and let me try and reconcile them for you. The briefing in the district court you're citing, it's page 64, was written in the context of when the lawsuits came in 2022 and the years right before that. It wasn't trying to reach all the way back to a theory of dissipation now why it went away. We were trying to drive home the point that there was a new injury that arose in 2022 that was different than what had happened right before that, because before that, there weren't the steps coming from the federal government to enforce the mandate on the state plans. And I would press the Court to look across... But the injury, the nature of the injury was the same the whole time. The injury was you didn't want to spend the money and...or increase the amount, and you were resisting doing that. And you were resisting back in 2016, you were resisting all the way through, and the government never backed off its position that you had to comply. Now the fact they said in a couple of years, we mean what we say, doesn't mean the other years when they said it, they didn't mean it. Your Honor, if I may briefly respond, thank you. The government backed away from the seriousness of the threat. The threat is what gives rise to the injury, because the state would have been... The injury is that when they backed away from the seriousness of the threat, the statute of limitations abated? Well, the injury went away, so we couldn't have sought prospective release to enjoin anything at that point. Except it didn't go away, because you agreed with me that the statement they made in the following year was the same as they made in 2016. But there was the intervening event of the 2018 fame report where OSHA made such a greater threat of enforcement. Thank you, Your Honor. Okay. All right, Mr. Day. Do you disagree with him? Regarding what, Your Honor? Everything. At least some things, not everything. Good morning, Your Honors. May it please the court. Kane Day for the federal government. I think that kind of gets at the point here. What is undisputed is that the only final agency action challenge here was the 2016 IFR, the state of South Carolina's entities that run their state plan have been out of compliance with federal law since then. There have been consistent and repeated fame reports reminding them of that fact, and I think that is enough alone to resolve this case. Thought through another lens might be... What's the explanation? I'm not sure it makes any difference, but what's the explanation? I would have to think about that, but what's the explanation for proposing or making a finding during one of the years saying we're going to go ahead now and then the next year not doing anything? Just going back and reminding them. I don't know that there's an explanation in the record, and I can't speak to any pre-decisional deliberative explanation that would have occurred behind the record, but I think one can posit many explanations. Enforcement resources, decisions about how to implement the plan, a decision to continue working with the state rather than launching full-on enforcement proceedings. I think there are many reasons that would explain that, but I think the fundamental point is that it doesn't amount to a dissipation that completely dissolves the injury. I'm happy to talk about the other issues in the brief, but unless the court asks questions, we'd ask a different. Thank you. Mr. Lambert? Thank you, Your Honor. A couple of thoughts to try and push the court a little more in our direction than it seems to be leaning. The first one as to the waiver question, because I know we need to get over that one out of the gate, Judge Agee, is that the arguments that are being pressed there really have to be read in conjunction with the motion to dismiss that was brought and to which it's responding. I don't think the state there had to take an affirmative position one way or another as to what happened with any threat that arose in 2016, and the way that argument was framed was largely in response to the arguments that OSHA made below. The fundamental question, and I think we would point back to board for this language, you can make variations on the argument below if you're asking the same fundamental question. The fundamental question is, did the state suffer an injury in 2022 that gave rise to an injury, in fact? Was there a credible threat? You keep focusing on injury, and that's important, of course, but in 2016, when they advised you that you had to come into compliance, what was the injury then? The injury then would have been the credible threat of enforcement that came with the rule's publication. That's not injury, the threat of enforcement. The injury was that you were out of compliance and you would have to comply, right? Your Honor, I don't know that the rule in a vacuum is enough, because you have to sue a federal official to seek declaratory or injunctive relief. The relief we saw was prospective injunctive relief to prevent the mandate from being imposed against the state plan. To seek that relief, you have to have some threat that it's going to be enforced against you. The rule's publication can come with that threat. OSHA may have carried that threat up to the 2018 fame report, but when OSHA failed to follow through, the reasonable conclusion to draw was that OSHA wasn't looking to enforce it against someone, and it wasn't just South Carolina that thought so. All the other state plans did. What changed was in 2022 OSHA's enforcement priorities. The threat became credible. It was imminent. It had moved against Arizona. It made a finding against South Carolina and the other states. Not only South Carolina, but... Let me ask you, did the amount of noncompliance increase every year when the feds increased their amount? Certainly the delta changed, Your Honor, but Judge Niemeyer, the District Court noted that in the first lawsuit that those annual adjustments were not final agency action. So I don't think you can then say, well, if every year the number's growing, the threat gets bigger. The threat actually has to be the enforcement whether it's $1 or $1 million. It's the threat that OSHA's going to move against the state plan that creates the injury that gives rise to us bringing this case. We brought it when we got injured from the 2022 threats. That case is timely and all we're asking for is the opportunity to go back and argue in the District Court without a threat to the final plan and betting the farm that OSHA's mandate is inconsistent with the OSHA Act. So we would ask that you reverse and remand for more proceedings. Thank you, Your Honor. We'll adjourn court for the day and come down to Greek Council.
judges: Paul V. Niemeyer, Roger L. Gregory, G. Steven Agee